**JEFFREY C. METZGER, Bar No. 96583**
**LAW OFFICES OF JEFFREY C. METZGER**
**5120 Campus Drive, Suite 150**
**Newport Beach, CA 92660**
**jmetzger@metzgerlaw.com**
**Phone: (949) 756-1196**
**Fax: (949) 756-0830**

Attorney For Plaintiff, Steve Darden

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| STEVE DARDEN,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>RELIANCE STANDARD INSURANCE COMPANY,<br><br>　　　　　Defendants. | CASE NO.: 15-cv-1478<br><br>COMPLAINT FOR:<br>1. Breach of Plan Benefits (ERISA)<br>2. Declaratory Relief<br>3. Injunctive Relief |

Plaintiff Steve Darden, (hereinafter "Darden" or "Plaintiff"), hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B) et seq. This Court's jurisdiction is invoked pursuant to 29 U.S.C. Section 1337 and 29 U.S.C. Section 1132(e).

2. Venue is properly laid within the Central District of California, Southern Division pursuant to 29 U.S.C. Section 1132(e)(2) because a substantial part

of the events giving rise to the claim occurred in this district and division, the Plan was administered in this judicial district and division, the legal domicile of the Wyndham Worldwide Long-Term Disability Plan may be considered in this district because it covers one or more of the employees who reside in this district and division, the breaches alleged occurred in this judicial district and division, and because the ends of justice so require.

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor Regulations, 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before the Court for judicial review.

## PARTIES

4. Plaintiff was, and is, a resident of Orange County, California at all relevant times. Further, when employed at Wyndham Worldwide, his principal place of business was in Orange County.

5. Defendant RELIANCE STANDARD LIFE INSURANCE COMPANY (hereinafter "Reliance Standard") is an insurance carrier and claims administrator duly organized and existing under and by virtue of the laws of the State of Pennsylvania, and it is authorized to conduct business in the state of California.

6. At all relevant times, Plaintiff was an employee of Wyndham Worldwide, and a participant, in the Wyndham Worldwide Long-Term Disability Plan ("the Plan"), an employee welfare benefit plan as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), that provides long-term disability insurance coverage and benefits to its employees.

7. Plaintiff is informed and believes and based upon such information and belief alleges that Defendant RSL is a corporation acting as an agent for the Plan; that Defendants are charged with certain claims-handling

responsibilities under the employee benefit plan; that Defendant's responsibilities extend at least in part to misconduct alleged below; and that Defendant's employees and representatives functioned as fiduciaries within the meaning of 29 U.S.C. Section 1002(21)(A), in their dealings relating to Plaintiff's claim for benefits.

## FACTS

8. RSL issued policy No. LTD 121329, under which long term disability ("LTD") benefits are provided by The Plan. RSL is a claim fiduciary responsible for making benefit determinations and paying benefits under the Plan, and is legally liable for providing the benefits sought in this suit.

9. The pertinent provisions of the plan provide that for the first two years of disability, Plaintiff is entitled to benefits if unable to perform the duties of his own occupation. Thereafter, Plaintiff is entitled to benefits if unable to perform the substantial and material duties of any occupation for which he is reasonably suited by education, training, or experience.

10. Plaintiff was employed as a Director of Sales Operations for Wyndham Worldwide, a result-oriented, highly competitive occupation, involving a multitude of duties requiring high energy, concentration, focus, and the ability to multi-task.

11. Plaintiff became disabled in October 2011 because of chronic cervical radiculopathy that resulted in two neck surgeries from which he did not recover sufficiently to be able to return to any full-time occupation. Following the second surgery in April 2012, Plaintiff continued to have persistent severe neck pain, bilateral upper extremity pain, and sensory abnormalities, such that his neurosurgeon, Paulino Yanez, M.D., concluded that Plaintiff "is unable to sit or stand for more than 10 minutes without significant pain. He is, therefore, in my opinion permanently disabled."

12. Plaintiff timely submitted a claims to Defendant for benefits under the Plan

that was supported by the required medical request forms completed by his physician.

13. On February 27, 2012, Defendant determined that Plaintiff was totally disabled from performing the duties of his own occupation, an occupation that Defendant contended was sedentary, accepted his claim, and began paying monthly benefits disability benefits. For the following 24 months, Defendant found Plaintiff's conditions to prevent him from performing the material and substantial duties of his occupation.

14. Moreover, Defendant recognized Plaintiff's condition as disabling on multiple occasions. On March 5, 2012, C. Bathelmy, RN wrote, "The medical records reviewed support a less than sedentary level of function from date of disability due to persistent neck pain with radicular symptoms into the upper extremities." Nurse Bathelmy reviewed the file again on September 5, 2012 following another of Plaintiff's surgeries, and noted that Plaintiff still had a less than sedentary level of functioning due to neck pain that did not resolve in the previous surgery. She reviewed the file again in October 2012, and based upon shock-like sensations through Plaintiff's spine when extending his neck, and the worsening of his condition following an automobile collision, she concluded that "medical continues to support a less than sedentary level of function due to neck pain with radicular symptoms exacerbated by recent injuries and continued pain management with Morphine."

15. In February 2013, Dr. Yanez, M.D. that "The history of severe neck pain and right upper extremity pain and sensory abnormalities led to an MRI that showed a prominent central and right sided disc/osteophyte complex causing cord compression, and a prominent disc protrusion at C6-7."

16. As a result, on February 25, 2013, another of Defendant's in-house medical reviewers, Laurie Modrall, RN wrote: "The medical records continue to

support less than sedentary work function for chronic cervical radiculopathy into with (sic) arms. Given the claimant's chronic pain issues and refusal of additional surgery, recovery to his prior level of function appears unlikely."

17. All of the above reviews and evaluations by Defendant established that it considered Plaintiff disabled from any occupation for which he was reasonably situated in addition to his own occupation.

18. Plaintiff's condition did not improve thereafter. However, despite the absence of any such improvement, on February 10, 2014 another of Defendant's in-house nurse consultants, C. Ricci, RN, in a review as to whether Plaintiff will remain entitled to benefits upon the change of definition to "any occupation," wrote that because there was no "significant" spinal cord compression, and that no further surgery was recommended, Plaintiff would be able to return to work, a conclusion that was false, illogical, erroneous, and transparently biased.

19. Yet, on the basis of that review, Defendant's responsible claim handler referred the claim to an in-house vocational consultant who concluded, solely on the basis of the nurse's conclusion and in defiance of every other piece of evidence to the contrary, that there were certain occupations that Plaintiff could perform. And, solely on the basis of that review, and also to the exclusion of all of the evidence to the contrary, Defendant terminated Plaintiff's claim on February 14, 2014. Defendant not only contended that Plaintiff's pain "looks to be controlled" by medication, an utterly false conclusion upon which there was no supporting evidence, but Defendant deceitfully rewrote the recent history, claiming that Plaintiff's disability was due to a psychiatric condition, to wit, depression, anxiety, and panic disorders, so as to claim that the claim could be terminated on the basis of the policy's "mental or nervous disorder" provisions that limit benefits to 24 months for such disabling conditions. Defendant made no attempt to

reconcile that its vocational assessment and its decision that Plaintiff remained disabled from depression and anxiety were hopelessly in conflict.

20. Defendant's determination in terminating Plaintiff's benefits was wrong, unreasonably so, both on the evidence and information that it based its denial, and even more so when considering the additional documentation Plaintiff presented in appealing the termination on November 3, 2014, as demonstrated by the following:

   a. Medical records consistently documented chronic neck pain and reduced ranges of motion that not only did not improve, but actually were exacerbated in 2013. The records further demonstrated that Plaintiff was afflicted by additional conditions that prevented him from working, including sleep apnea, rotator cuff syndrome, and major depression secondary to (and as a result of) his chronic pain.

   b. A Fully Favorable decision of the Social Security. Administrative Law Judge Joseph P. Lisiecki III found the following: i) Mr. Darden's failed back syndrome constitutes a "severe impairment," i.e., an impairment that significantly limits his ability to perform basic work activities; ii) the severity of his impairments medically meets the criteria for a Disorder of the Spine based on "clinical findings of appropriate medically acceptable imaging that corroborates the claimant's symptoms of chronic pain and weakness resulting in inability to ambulate effectively"; iii) Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are credible. The significant weight to which these findings should be afforded are enhanced by reason that it was Defendant that not only urged Plaintiff to seek Social Security disability benefits, advising Plaintiff that it "encourages" claimants to apply for such benefits "because it is often in the best interest of our

claimants to receive such benefits." Moreover, Defendant offered Plaintiff to be represented in this proceeding by the Advocator Group, who Plaintiff did then retain, and who was responsibile for Plaintiff winning his Social Security appeal.

c. The appeal also included results of functional testing that demonstrated "it would not appear that Mr. Darden would be able to return to his full time position of employment even with accommodations for positional changes and productivity." Based on the findings, including minimal coping skills while completing the evaluation, "increased pain during the course of the testing, the need for frequent position changes, the diminishing tolerance for activity over time, his ineffective movement strategies noted in functional task completion, the challenges to his cognitive abilities and the deconditioning that has occurred with inactivity over the period of time since her (sic) injury, all reflect the extreme challenges that he would face as employment is concerned."

d. Finally, a comprehensive vocational analysis concluded that Plaintiff does not have the ability to perform in the occupations identified by Defendant's vocational consultant, because the only restrictions and limitations taken into consideration by Defendant was Plaintiff's ability to sit, while ignoring the plethora of other duties and activities that are involved in any occupation for which Plaintiff would be otherwise reasonably suited based on training, education, and experience. The analysis further described that Plaintiff's well-documented pain is, from a vocational standpoint, a barrier to performing in the kind of responsible position for which Plaintiff would otherwise be reasonably suited. Finally, the analysis provided data to support that Plaintiff does not have the ability to perform in

|   |   |   |
|---|---|---|
| 1 |   | any occupation that he would be reasonably suited by reason of |
| 2 |   | training, education or experience. |
| 3 | 21. | On November 21, 2014, Defendant informed Plaintiff that it had reviewed |
| 4 |   | the material in Plaintiff's appeal and determined that it was requiring |
| 5 |   | Plaintiff to undergo an "independent medical examination."  Plaintiff is |
| 6 |   | informed and believes and so alleges that Defendant's request was not a |
| 7 |   | genuine and good faith effort to evaluate Plaintiff's disabling condition, but |
| 8 |   | rather was a pretext to provide itself "cover" to support a continued denial of |
| 9 |   | the claim.  This is demonstrated not only in that Defendant did not request |
| 10 |   | such an examination before terminating paying Plaintiff's benefits, violating |
| 11 |   | the ERISA regulations, but also by the bogus examination that ensued upon |
| 12 |   | which Defendant relied even as presented with the evidence of the |
| 13 |   | examining doctors spurious findings. |
| 14 | 22. | Nonetheless, Plaintiff agreed to undergo the examination so long as certain |
| 15 |   | reasonable conditions were met, including that the examination could be |
| 16 |   | recorded, that an observer may be present, and that Plaintiff would have an |
| 17 |   | opportunity to respond to the report prepared by the examining physician if |
| 18 |   | necessary.  While not providing a satisfactory explanation as to why the IME |
| 19 |   | was not performed before the benefits were terminated, Defendant did agree |
| 20 |   | to these specific terms. |
| 21 | 23. | The examination by Van Chen, M.D. took place on December 10, 2014. The |
| 22 |   | entire amount of time the doctor spent with Plaintiff was 45 minutes, and |
| 23 |   | only seven and one-half minutes of that time was devoted to the actual |
| 24 |   | physical examination. |
| 25 | 24. | On January 9, 2015, Defendant provided Plaintiff with a copy of Dr. Chen's |
| 26 |   | report of the IME, that concluded Plaintiff has a failed neck/post cervical |
| 27 |   | laminectomy syndrome that is resulting in an opoid dependengt chronic pain |
| 28 |   | syndrome with chronic neck and right upper extremity pain.  He further |

concluded that Plaintiff's two previous spinal fusion surgeries are substantiation for his chronic pain. Yet, he then unreasonably dismissed the condition, in clear deference to the position of the party retaining him (although disingenuously claiming that he did not know by whom he was retained) by stating that the pain was greater that what he would expect. As a result, he then concluded on the basis of conjecture, and without considering actual functional testing to the contrary, that Plaintiff was capable of returning to light duty full-time work.

25. Dr. Chen's report is replete with factual errors and omissions, and illogical conclusions. Thus, Plaintiff responded to Defendant on February 11, 2015 providing a report from the nurse observer who was present at the examination, the audio recording of the examination, and a description of the plethora of errors contained in the report. These included that the report stated results of tests that did not occur, misreporting the amount of time the doctor spent with the patient, ignoring positive findings, falsely stating that Plaintiff did not report pain on certain parts of the examination, and providing entirely false conclusions about Plaintiff's physical capacity.

26. Yet, on March 17, 2015, Defendant denied Plaintiff's appeal, accepting the findings and conclusions of the IME in full, continuing to dismiss the opinions of the treating neurosurgeon, and attempting to dismiss the favorable Social Security Award with a duplicitous explanation that the Administrative Law Judge did not have Dr. Chen's hopelessly flawed report when he rendered his decision.

27. In addition, Defendant based its determination on new evidence and new grounds upon which to base the termination that Plaintiff had not seen nor had an opportunity to respond to. Specifically, the company obtained recent surveillance video that it contended showed an activity level not entirely consistent with Plaintiff's asserted level of function, though, in truth, the

|   |   |
|---|---|
|   | video far from contradicted Plaintiff's disability.  Defendant's denial also relied on a subsequent employment evaluation that added another occupation to those that it previously contended Plaintiff could perform. |
| 28. | Defendant asserted that its decision was final, no further review would be conducted, and that Plaintiff's administrative remedies had been exhausted. |
| 29. | However, in relying on new evidence and raising new grounds for denial while attempting to preclude Plaintiff to respond to its new rationale, Defendant violated ERISA's procedures and principle that required a meaningful dialogue between the parties.  As a result, on March 24, 2015, Plaintiff,  wrote to Defendant advising of its violation of the ERISA procedures, explained that he is rightfully entitled to another appeal of his denied claim  and requested that it agree to review Plaintiff's appeal to such new evidence and new grounds for denial. |
| 30. | Defendant did not respond to Plaintiff's letter, so on August 6, 2015, Plaintiff responded to the new evidence and new grounds for denial by submitting an appeal to those issues, and citing the applicable law that allowed Plaintiff to appeal the new evidence and grounds for denial, and required Defendant to conduct a proper review of what was submitted.  Specifically, in response to the surveillance video footage and Defendant's interpretation of it, Plaintiff submitted statements from himself and from an independent witness, and a relevant photo and short video narrated by Plaintiff.  Plaintiff's cover letter also included a detailed breakdown of the video challenging Defendant's claim that the video demonstrates Plaintiff's ability to function at a level that would allow for full-time work.  Plaintiff also, on August 14, 2015, submitted a supplemental report from his vocational consultant addressing the added occupation that Defendant claimed he could perform. |
| 31. | On August 7, 2015, and August 17, 2105, Defendant wrote to Plaintiff |

refusing to review the additional material, summarily claiming that Plaintiff is entitled to one appeal that was provided, and that its previous determination was final. As a result, Plaintiff's response to the new evidence are part of the Administrative Record, which is closed upon the filing of this lawsuit.

32. Whether Plaintiff is eligible for LTD benefits shall be decided by the court on de novo review. De novo review is applicable because the Plan does not confer discretionary authority to RSL to decide questions of eligibility for benefits, and even if it did, California Insurance Code Section 10110.6 renders such discretionary authority void as a matter of California law.

33. To the extent that abuse of discretion review applies to Defendant RSL's claim and appeal decision, Plaintiff is informed and believes that Defendant RSL denied his claim for LTD benefits because of its financial conflict of interest caused by its dual role as payor of benefits and the claims administrator. RSL's conflict of interest warrants increased skepticism of its decision to deny Plaintiff's LTD claim and appeal. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc) and *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008).

## FIRST CAUSE OF ACTION

## (BREACH OF PLAN (CLAIM FOR LTD BENEFITS, § 502(a)(1)(B))

34. The allegations of paragraphs 1 through 33, inclusive, are incorporated herein by reference.

35. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

36. At all relevant times, Plaintiff has been entitled to benefits under the Plan. By terminating Plaintiff's claim for benefits under the Plan, and by related

acts and omissions, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

37. As a direct and proximate result of the aforementioned conduct of Defendants in failing to reinstate disability benefits, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received had Defendants made the disability payments.

38. Plaintiff is entitled to prejudgment interest at the appropriate rate.

## SECOND CAUSE OF ACTION
### (DECLARATORY RELIEF PURSUANT TO 20 U.S.C. 1132(A)(1)(B))

39. The allegations of paragraphs 1 through 38, inclusive, are incorporated herein by reference.

40. An actual controversy exists between Plaintiff and Defendant arising out of the events alleged herein above. Specifically, Plaintiff contends that Defendants have no legal basis for denying long-term disability and waiver of premium benefits; that such benefits were wrongfully withheld or denied; that the denial of long-term disability and waiver of premium benefits are breaches of THE PLAN; that the practices of Defendants should be estopped on the basis of equity; that the practices of Defendants, and each of them, fail to satisfy the minimum requirements of ERISA, and are fraudulent; and, that the practices of Defendants, and each of them, are barred as a matter of state and federal law. Plaintiff is informed and believes and based thereon alleges that the Defendants dispute Plaintiff's contentions.

41. Plaintiff seeks declaratory relief with respect to said controversies, and all other appropriate remedies.

## THIRD CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY AND CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO 29 U.S.C. SECTION 1132(a)(3))

42. The allegation of paragraph 1 through 41, inclusive, are incorporated herein

by reference.

43. ERISA, 29 U.S.C. § 1133 requires that, in accordance with regulations of the Secretary of Labor, every employee benefit plan must afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

44. The governing regulations from the Secretary of Labor require that a plan must establish and maintain reasonable claims procedures, including, but not limited to, the following:

   a. In the case of an adverse benefit determination, the claimant must be notified of the determination within a reasonable period of time, but not later than 45 days after the receipt of the claim by the plan, except that in the event of special circumstances, the time may be extended by an additional 45 days.  29 C.F.R. §2560.503-1(f)(3).

   b. An adverse benefit determination must include the specific reason or reasons for the determination, reference tot he specific plan provisions on which the determination is based, a description of any material or information necessary for the claimant to perfect the claim, a description of the plan's review procedures and the applicable time limits, and a statement regarding any internal rule, guideline, protocol or similar criterion that was relied upon in making the adverse determination.  29 C.F.R. §2560.503-1(g).

   c. The ERISA statute also requires that a fiduciary of an employee benefit plan administer the plan in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.  29 U.S.C.  §§1001-1168.

   d. When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from

responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures. Such "a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA." *Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 955, 974 (9th Cir. 2008).

 e. A plan participant is entitled to bring a civil action to enjoin any act or practice which violates any provision of ERISA Title I or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this title or the terms of the plan.

45. Defendant's failure to make a reasonable inquiry, failure to fairly weigh the medical evidence, and faulty and arbitrary determinations of Plaintiff's entitlement to benefits, constitute breaches of its fiduciary duties to participants by failing to provide a reasonable opportunity for a full and fair review.

46. Further, by asserting new grounds for denial, and basing its denial on new evidence that Plaintiff did not have an opportunity to respond and or challenge, Defendant breached its fiduciary duty. Moreover, Plaintiff is informed and believes that such conduct is party of a pattern and practice of evaluating such claims against the interest of its beneficiaries.

47. As a result of Defendant's practices and determination, Plaintiff has sustained injuries and damages as alleged in the entirety of this complaint

48. By terminating Plaintiff's benefits, Defendant has breached its fiduciary duty, and in addition to the recovery of benefits, Plaintiff is also entitled to, and hereby seeks that this Court grant the following equitable relief:

 a. That the Administrative Record be deemed closed as of Plaintiff's submission of the documents and other evidence on August 6, 2015 and August 17, 2015, and that all evidence and records obtained or

1         produced thereafter be disregarded.

2     b.  Enjoining Defendant from denying or discontinuing Plaintiff's
3         benefits for so long as Plaintiff remains totally disabled as defined in
4         the applicable Plan documents;

5     c.  Removing Defendant RSL as plan and/or claims administrator of
6         Plaintiff's claim for benefits;

### PRAYER FOR RELIEF:

8   WHEREFORE, Plaintiff prays for judgment as follows:

9 <u>ON THE FIRST CAUSE OF ACTION</u>:

10  1.  For long-term disability benefits payable under THE PLAN, plus interest;

11  2.  For reasonable attorney's fees and costs; and,

12  3.  For such other relief as the court deems appropriate.

13 <u>ON THE SECOND CAUSE OF ACTION</u>:

14  4.  For a declaration that de novo review applies to the Court's review of
15      Plaintiff's claim;

16  5.  For a declaration that Plaintiff is, was and continues to remain, disabled as
17      defined under the terms of both Plans, and entitled to receive long-term
18      benefits and waiver of premium benefits;

19  6.  For a declaration that Defendant has violated the terms of the Plans by
20      terminating Plaintiff's claim for benefits from April 12, 2014 through the
21      date of judgment;

22  7.  For a declaration regarding the Defendants' noncompliance with minimum
23      requirements under ERISA and other federal and state laws in connection
24      with the discontinuation of Plaintiff's coverage;

25  8.  For reasonable attorney's fees and costs; and

26  9.  For such other and further relief that the court deems appropriate.

27 <u>ON THE THIRD CAUSE OF ACTION</u>::

28  10.  For injunctive relief requiring coverage under the Plan from the time that

Plaintiff's benefits were terminated up and through the date of judgment and continuing thereafter for as long as Plaintiff continues to remain eligible for benefits, closing the Administrative Record following the submission of Plaintiff's August 6, 2015 and August 17, 2015 letters and accompanying reports, and that all evidence and records obtained or produced thereafter be disregarded and disallowed into the record, and, removing Defendant RSL as administrator of Plaintiff's claims for benefits;

11. For reasonable attorney's fees and costs; and

12. For such other and further relief as the court deems appropriate.

Dated: September 13, 2015         LAW OFFICES OF JEFFREY C. METZGER
                                  A Law Corporation

                                  By: */s/ Jeffrey C. Metzger*
                                      JEFFREY C. METZGER, Esq.
                                      Attorney for Plaintiff, Steve Darden